1
2
3
4
5
6
7
8
9
10
11

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

IDA BELLE ROLAIN,

      Plaintiff,

v.

WAL-MART STORES, INC., *et al*.,

      Defendants.

Case No. 2:11-CV-01900-KJD-PAL

**ORDER**

      Before the Court is the Motion for Summary Judgment (#33) filed by Defendants Wal-Mart Stores, Inc. and Eastern Beltway, LTD. (collectively "Defendants"). Plaintiff filed an opposition (#35) and Defendants filed a response (#36).

I. Background

      On January 27, 2009, Plaintiff drove to the Wal-Mart store on 2310 East Serene Avenue, Las Vegas, Nevada. While walking through the parking lot, Plaintiff fell and sustained injuries. In

Plaintiff's initial Customer Statement, which was completed on the day of the accident, Plaintiff states "I got out of my car, turned to walk into Wal-Mart. My foot caught on something and I went down."

Plaintiff worked at a Great Clips salon which shared a parking lot with the same Wal-Mart store. Plaintiff had worked at the Great Clips for five years and frequently walked to the Wal-Mart store. Plaintiff testified that she and her co-workers noted that the parking lot was in "disarray" including squares of asphalt that had been cut out and other damage. Plaintiff testified that she and her co-workers repeatedly observed the damaged parking lot and noticed that "Behind the cars usually were cut-outs and they weren't repaired properly because they just got worse again because of the cracks where the cut-outs were and the corners that weren't fixed properly."

Plaintiff also testified that on the day of her injury, she was aware that there were cut-outs in the parking lot and that it was "messed up." She further testified that on the day of the accident, after parking her car, she observed two-foot by two-foot cut-out squares in the area where her car was parked.

Plaintiff testified that while walking to the store, she did not look down and was "looking back," observing other pedestrians when she fell. Plaintiff testified that she believes that she either tripped or slipped on a crack, or stepped into the hole created by the cut-out.

II. Discussion

    A.  Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual dispute

1    for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R.

2    Civ. P. 56(e).

3         All justifiable inferences must be viewed in the light most favorable to the nonmoving party.

4    See Matsushita, 475 U.S. at 587.  However, the nonmoving party must produce specific facts, by

5    affidavit or other evidentiary materials similar to those described in Rule 56, to show that there is a

6    genuine dispute for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Summary

7    judgment motions can only be defeated by admissible evidence.  In re: Oracle Corporation Securities

8    Litigation, 627 F.3d 376, 385 (9th Cir. 2010).  "[U]ncorroborated and self-serving testimony,"

9    without more, will not create a "genuine issue" of material fact precluding summary judgment.

10   Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "A conclusory,

11   self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a

12   genuine issue of material fact." Nilsson v. City of Mesa, 503 F.3d 947, 952 n. 2 (9th Cir. 2010)

13   (citation omitted).

14        Summary judgment shall be entered "against a party who fails to make a showing sufficient

15   to establish the existence of an element essential to that party's case, and on which that party will

16   bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted

17   if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

18        B. Pro Se Pleadings

19        Plaintiff is representing herself pro se.  Courts must liberally construe the pleadings of pro se

20   parties. See United States v. Eatinger, 902 F.2d 1383, 1385 (9th Cir. 1990).  However, "pro se

21   litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of

22   record." Jacobsen v. Filler, 790 F.2d 1362, 1364 (9th Cir.1986).

23        C. Negligence

24        To prevail on a traditional negligence theory, a plaintiff must demonstrate that "(1) the

25   defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was

26   the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." DeBoer v. Sr.

3

1   Bridges of Sparks Fam. Hosp., 282 P.3d 727, 732 (2012). Whether a defendant was negligent is

2   generally a question of fact for the jury to resolve, and courts are reluctant to grant summary

3   judgment in negligence cases. Harrington v. Syufy Enters., 931 P.2d 1378, 1380 (1997). However,

4   summary judgment is proper when the plaintiff cannot recover as a matter of law. Butler v. Bayer,

5   123 Nev. 450, 461, 168 P.3d 1055, 1063 (2007). To establish entitlement to judgment as a matter of

6   law, Defendants must negate at least one of the elements of negligence. Harrington, 113 Nev. at 248,

7   931 P.2d at 1380.

8         D. Open and Obvious Risk

9         Defendants assert that, because the risk posed by the cut-outs in the parking lot was open and

10  obvious, they owed no duty to warn Plaintiff.  According to Defendants, because Plaintiff was aware

11  of the condition of the parking lot, she cannot establish a duty of care or a breach of that duty.  To

12  support their claim for summary judgment, Defendants rely heavily on Gunlock v. New Frontier

13  Hotel, 78 Nev. 182, 185, 370 P.2d 682, 684 (1962).  In that case, the Nevada Supreme Court found

14  that a premise owner  "'is not liable for injury to an invitee resulting from a danger which was

15  obvious or should have been observed in the exercise of reasonable care.'" According to Defendants,

16  because Plaintiff admitted that she was aware of the open and obvious hazard, the Court can

17  determine, as a matter of law, that Defendants owed no duty to warn.

18        After Defendants filed their Motion, the Nevada Supreme Court, in Foster v. Costco

19  Wholesale Corp., 291 P.3d 150 (Nev. 2012), abrogated the "open and obvious" doctrine espoused in

20  Gunlock.  In that case, Foster, the plaintiff, tripped over a pallet left in the aisle of the Henderson,

21  Nevada Costco store.  Foster testified that he saw pallets in the aisle prior to his fall.  Costco cited

22  Gunlock, and claimed that it was entitled to summary judgment because the presence of the pallet

23  was an open and obvious danger.  The district court agreed that Costco had no duty to warn of the

24  open and obvious risk and granted summary judgment in Costco's favor.  The Nevada Supreme

25  Court stated that under the approach outlined in the Restatement (Third) of Torts, "landowners bear a

26

4

general duty of reasonable care to all entrants, regardless of the open and obvious nature of

dangerous conditions" and reversed the grant of summary judgment, holding that:

> "Costco is not free from liability under Nevada law solely because the danger of the pallet in its aisle may have been open and obvious to Foster . . .. Even if a jury finds the risk to be open and obvious, it must also decide whether Costco nevertheless breached its duty of care to Foster by allowing the conditions to exist and by permitting Foster to encounter those existing conditions; if so, the jury must further determine whether Foster was partially at fault under comparative negligence theories."

Foster 291 P.3d at 156.

The facts in this case are not meaningfully different from those in Foster.  Defendants owed a

general duty of care to Plaintiff regardless of the open and obvious nature of the conditions of the

parking lot.  A question of fact still remains about whether Defendants breached that duty of care by

exposing Plaintiff to the conditions in the parking lot.  Accordingly, summary judgment is not

appropriate based on the now-abrogated "open and obvious" doctrine.

### E. Assumption of Risk

Defendants also assert that summary judgment should be granted under the implied

assumption of risk doctrine.  The implied assumption of risk doctrine generally is divided into two

subcategories: "primary" and "secondary." Turner v. Mandalay Sports Entm't, 180 P.3d 1172, 1177

(2008).

#### 1. Primary Assumption of Risk

Primary implied assumption of risk "arises when 'the plaintiff impliedly assumes those risks

that are inherent in a particular activity.'" Id. (quoting Davenport v. Cotton Hope Plantation, 333

S.C. 71, 508 S.E.2d 565, 570 (S.C.1998)). It has also been described as "resulting from a relationship

that a plaintiff voluntarily accepts involving a lack of duty in the defendant and known risks which

the plaintiff impliedly assumes." Mizushima v. Sunset Ranch, 737 P.2d 1158, 1160 (1987), overruled

in part by Turner, 180 P.3d at 1177. This situation has been most recognized where the plaintiff is a

spectator or a participant in sporting events. See Turner, 180 P.3d 1172 (spectator at a baseball

game); Fortier v. Los Rios Community College, 45 Cal.App.4th 430, 52 Cal.Rptr.2d 812

1  (Ct.App.1996) (student injured in football class); <u>Swagger v. City of Crystal</u>, 379 N.W.2d 183

2  (Minn.Ct.App.1985) (spectator at a Softball game).

3       Nevada law imposes on landowners a duty of reasonable care to all entrants, regardless of the

4  open and obvious nature of dangerous conditions.  Nevada has never applied the primary implied

5  assumption of risk doctrine in the context of a slip and fall at a retail store.  There is no indication

6  that by walking in the parking lot, Plaintiff impliedly assumed a risk abrogating Defendants of their

7  duty of reasonable care as landowners.  Accordingly, the Court cannot determine as a matter of law

8  that Defendants are entitlted to summary judgment based Plaintiff's implied primary assumption of

9  the risk.

10                     2. Secondary Assumption of Risk

11       Secondary implied assumption of the risk "is characterized by the voluntary encountering of a

12  known risk created by a defendant's negligence." <u>Mizushima</u>, 737 P.2d at 1160; <u>see also</u> <u>Turner</u>, 180

13  P.3d at 1177 n. 22 (recognizing that secondary implied assumption of the risk "arises where 'the

14  plaintiff knowingly encounters a risk created by the defendant's negligence' " (quoting <u>Davenport</u>,

15  508 S.E.2d at 571); "Assumption of risk . . . is founded on the theory of consent, with two main

16  requirements: (1) voluntary exposure to danger, and (2) actual knowledge of the risk assumed"

17  (internal quotation omitted)). "Knowledge or lack of it on the part of the person against whom the

18  [assumption of risk] defense is raised is a factual matter for the jury to pass upon." <u>Sierra Pacific v.</u>

19  <u>Anderson</u>, 358 P.2d 892, 894 (Nev. 1961); <u>see also</u> <u>Turner</u> 180 P.3d at 1177 n. 30 (secondary implied

20  assumption of the risk is a "question of comparative negligence" which is the responsibility of the

21  jury).

22       Because secondary implied assumption of the risk is a factual matter for the jury, the Court

23  cannot grant summary judgment on this basis.  Accordingly, summary judgment is denied.

24  //

25  //

26  //

6

III.  Conclusion

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#33) is **DENIED**.

DATED this 26th_ day of March 2013.

_____
Kent J. Dawson
United States District Judge